## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SARAH HEINZL, individually and on behalf of
all others similarly situated,

                     Plaintiff,

      v.

WALGREEN CO.,

                     Defendant.

Case No.

Filed Electronically

## CLASS ACTION COMPLAINT

COMES NOW, Sarah Heinzl, ("Plaintiff") on behalf of herself and all others similarly situated and alleges as follows:

### INTRODUCTION

1.     Plaintiff brings this action individually and on behalf of all others similarly situated against Walgreen Co. ("Defendant"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, (the "ADA") and its implementing regulations, in connection with accessibility barriers in the parking lots and paths of travel at various public accommodations owned, operated, controlled and/or leased by Defendant ("Defendant's facilities").

2.     Plaintiff has a mobility disability and is limited in the major life activity of walking, which has caused her to be dependent upon a wheelchair for mobility.

3.     Plaintiff has patronized Defendant's facilities and was denied full and equal access as a result of Defendant's inaccessible parking lots and paths of travel.

4.      Plaintiff's experience are not isolated—Defendant has systematically discriminated against individuals with mobility disabilities by implementing policies and practices that consistently violate the ADA's accessibility guidelines and routinely result in access barriers at Defendant's facilities.

5.      In fact, numerous facilities owned, controlled and/or operated by Defendant have parking lots and paths of travel that are inaccessible to individuals who rely on wheelchairs for mobility, demonstrating that the centralized policies and practices Defendant employs with regard to the design, construction, alteration, maintenance and operation of its facilities cause access barriers, and/or allow them to develop and persist at Defendant's facilities.

6.      Unless Defendant is required to remove the access barriers described below, and required to change its policies and practices so that access barriers do not reoccur at Defendant's facilities, Plaintiff and the proposed Class will continue to be denied full and equal access to those facilities as described, and will be deterred from fully using Defendant's facilities.

7.      Consistent with 42 U.S.C. § 12188, Plaintiff seeks a permanent injunction requiring:

   a)  that Defendant remediate all parking and path of travel access barriers at its facilities, consistent with the ADA;

   b)  that Defendant change its corporate policies and practices so that the parking and path of travel access barriers at its facilities do not reoccur; and,

   c)  that Plaintiff's representatives shall monitor Defendant's facilities to ensure that the injunctive relief ordered pursuant to Paragraph 5(a) and 5(b) has been implemented and will remain in place.

8.      Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) was specifically intended to be utilized in civil

rights cases where the Plaintiff seeks injunctive relief for her own benefit and the benefit of a class

of similarly situated individuals.  To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2).  This subdivision is intended to reach situations where a party
> has taken action or refused to take action with respect to a class, and final relief of
> an injunctive nature or a corresponding declaratory nature, settling the legality of
> the behavior with respect to the class as a whole, is appropriate….Illustrative are
> various actions in the civil rights field where a party is charged with discriminating
> unlawfully against a class, usually one whose members are incapable of specific
> enumeration.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

9.      The ADA was enacted over a quarter century ago and is intended to "provide a

clear and comprehensive national mandate for the elimination of discrimination against individuals

with disabilities."  42 U.S.C. § 12101(b)(1).

10.      The ADA broadly protects the rights of individuals with disabilities in employment,

access to State and local government services, places of public accommodation, transportation,

and other important areas of American life.

11.      Title III of the ADA generally prohibits discrimination against individuals with

disabilities in the full and equal enjoyment of public accommodations,  42 U.S.C. § 12182(a), and

prohibits places of public accommodation, either directly, or through contractual, licensing, or

other arrangements, from outright denying individuals with disabilities the opportunity to

participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i), or denying

individuals with disabilities the opportunity to fully and equally participate in a place of public

accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii).

12.      Title III further prohibits places of public accommodation from utilizing methods

of administration that have the effect of discriminating on the basis of a disability.  42 U.S.C. §

12182(b)(1)(D).

13.    Restaurants, like Defendant, are public accommodations.  42 U.S.C. § 12181(7).

14.    Title III and its implementing regulations define discrimination to include the following:

a)  Failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992, 28 CFR § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv);

b)  Failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1);

c)  For alterations to public accommodations made after January 26, 1992, failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2); and

d)  Failure to maintain those features of public accommodations that are required to be readily accessible to and usable by persons with disabilities, 28 C.F.R. § 36.211.

15.    The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183.  42 U.S.C. 12188(a)(1).

16.    The ADA also provides for specific injunctive relief, which includes, but is not limited to, the following:

In the case of violations of sections 12182(b)(2)(A)(iv) and section 12183(a) of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter.  Where appropriate, injunctive relief shall also include…modification of a policy…to the extent required by this subchapter.

42 U.S.C. § 12188(a)(2); 28 C.F.R. § 36.501(b).

## JURISDICTION AND VENUE

17.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

18.     Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

19.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

20.     Plaintiff, Sarah Heinzl, is and, at all times relevant hereto, was a resident of the Commonwealth of Pennsylvania.  As a result of her disability, Plaintiff relies upon a wheelchair for mobility.  She is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

21.     Defendant Walgreen Co. is an Illinois corporation with its principal place of business located at 108 Wilmot Road, Deerfield, Illinois.  Defendant operates the "Walgreens" drugstore chain, which is the largest drugstore chain in the United States.

22.     Defendant is a public accommodation pursuant to 42 U.S.C. §12181(7).

## FACTUAL ALLEGATIONS

**I.      Plaintiff was Denied Full and Equal Access to Defendant's Facilities.**

23.     Plaintiff has visited Defendant's store located at 1741 Washington Road, Pittsburgh, Pennsylvania (the "Subject Property"), where she experienced unnecessary difficulty due to Defendant's non-compliance with the ADA in the parking facility.

24.     Plaintiff lives within approximately 5 miles of the Subject Property and has been to the Subject Property numerous times, and intends to return to the Subject Property.

5

25.    Furthermore, Plaintiff intends to return to Defendant's facilities to ascertain whether those facilities remain in violation of the ADA.

26.    Plaintiff will be deterred from returning to and fully and safely accessing Defendant's facilities, however, so long as Defendant's facilities remain non-compliant, and so long as Defendant continues to employ the same policies and practices that have led, and in the future will lead, to inaccessibility at its facilities.

27.    Without injunctive relief, Plaintiff will continue to be unable to fully and safely access Defendant's facilities in violation of her rights under the ADA.

28.    As an individual with a mobility disability who is dependent upon a wheelchair, Plaintiff is directly interested in whether public accommodations, like Defendant, have architectural barriers that impede full accessibility to those accommodations by individuals with mobility-related disabilities.

## II.    Defendant Repeatedly Denies Individuals With Disabilities Full and Equal Access to its Facilities.

29.    Defendant owns, controls and/or operates various Walgreen's drug stores throughout the United States.  On information and belief, as the common owner, controller and/or operator of its facilities, Defendant employs centralized policies and practices with regard to the design, construction, alteration and maintenance of its facilities.

30.    On information and belief, Defendant relies on its "Construction" and "Facilities Management" Departments to oversee the design, construction, alteration and maintenance of all the facilities it owns, controls and/or operates.

31.    On information and belief, the Defendant employs the following policies and procedures when constructing and altering its stores: the employment of similar design guidelines, the use of standard form contracts with architects and contractors, standardized procedures for

6

approving outside construction plans, employment of uniform process in regards to overseeing, completing, and/or reviewing construction.

32.　　On information and belief, Defendant employs the following policies and procedures in maintaining its facilities: the employment of a standardized maintenance procedure and personnel.

33.　　To date, Defendant's centralized design, construction, alteration, maintenance and operational policies and practices have systematically and routinely violated the ADA by designing, constructing and altering facilities so that they are not readily accessible and usable, by failing to remove architectural barriers, and by failing to maintain and operate facilities so that the accessible features of Defendant's facilities are maintained.

34.　　On Plaintiff's behalf, investigators examined additional locations owned, controlled, and/or operated by Defendant, and found the following violations, which are illustrative of the fact that Defendant implements policies and practices that routinely result in accessibility violations:

a) 1701 William Flynn Highway, Glenshaw, PA

    i.   The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

    ii.   The surfaces of one or more access aisles had slopes exceeding 2.1%; and,

    iii.   One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface of the parking area.

b) 9408 3rd Avenue, Brooklyn, NY

    i.   The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%.

c) 2043 Kensington Avenue, Amherst, NY

    i.   The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii.    The surfaces of one or more access aisles had slopes exceeding 2.1%;

      iii.   A curb ramp located on the route to the building entrance had a running slope exceeding 8.3%; and

      iv.   One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface of the parking area.

d) 3488 Main Street, Buffalo, NY

      i.    The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and

      ii.    A curb ramp located on the route to the building entrance had a running slope exceeding 8.3%.

e) 2601 Sherman Drive, Tonawanda, NY

      i.    The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii.    The surfaces of one or more access aisles had slopes exceeding 2.1%;

      iii.   No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces; and

      iv.   One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface of the parking area.

f) 650 Delaware Avenue, Buffalo, NY

      i.    The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii.    The surfaces of one or more access aisles had slopes exceeding 2.1%; and

      iii.   One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface of the parking area.

g) 1328 Abbot Road, Lackawanna, NY

      i.    The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii.    The surfaces of one or more access aisles had slopes exceeding 2.1%;

      iii.   No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces; and

      iv.   One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface of the parking area.

h)  1556 Hertel Avenue, Buffalo, NY

      i.   The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii.   The surfaces of one or more access aisles had slopes exceeding 2.1%;

      iii.   No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces; and

      iv.   One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface of the parking area.

i)  578 Dick Road, Depew, NY

      i.   The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii.   The surfaces of one or more access aisles had slopes exceeding 2.1%;

      iii.   A curb ramp located on the route to the building entrance had a running slope exceeding 8.3%;

      iv.   A curb ramp along the route to the entrance had a flare with a slope exceeding 10.0%;

      v.   No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces; and

      vi.   One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface of the parking area.

j)  343 Soringfield Avenue, Berkley Heights, NJ

      i.   The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii.   The surfaces of one or more access aisles had slopes exceeding 2.1%; and

      iii.   No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces.

k)  1147 South Avenue, Plainfield, NJ

      i.   The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

ii.   The surfaces of one or more access aisles had slopes exceeding 2.1%;

iii.   A portion of the route to the store entrance had a running slope exceeding 5.0%;

iv.   A portion of the route to the store entrance had a cross slope exceeding 2.1%; and

v.   No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces.

l)   440 South Washington Avenue, Piscataway, NJ

i.   The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

ii.   The surfaces of one or more access aisles had slopes exceeding 2.1%; and

iii.   One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface of the parking area.

m)   247 East Route 22, Green Brook, NJ

i.   The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

ii.   The surfaces of one or more access aisles had slopes exceeding 2.1%; and

iii.   One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface of the parking area.

n)   476 West Union Avenue, Bound Brook, NJ

i.   The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and

ii.   No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces.

o)   905 New Durham Road, Edison, NJ

i.   The landing at the top of the curb ramp had a slope exceeding 2.1%.

p)   841 Bloomington Road, Champaign, IL

i.   The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

ii.   The surfaces of one or more access aisles had slopes exceeding 2.1%;

      iii.   No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces; and

      iv.   One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface of the parking area.

q)  1757 West Kirby Avenue, Champaign, IL

      i.   The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii.   The surfaces of one or more access aisles had slopes exceeding 2.1%;

      iii.   No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces; and

      iv.   One or more access aisles adjacent to a purportedly accessible parking space was less than 60 inches wide.

r)  2402 Village Green Place, Champaign, IL

      i.   The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and

      ii.   No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces.

s)  1713 West Springfield Avenue, Champaign, IL

      i.   The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii.   The surfaces of one or more access aisles had slopes exceeding 2.1%;

      iii.   No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces; and

      iv.   One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface of the parking area.

35.    The fact that numerous of Defendant's facilities deny individuals with mobility-related disabilities full and equal access to Defendant's facilities, and the fact that each of these facilities deny access by way of inaccessible parking facilities, is evidence that the inaccessibility

Plaintiff experienced is not isolated, but rather, caused by Defendant's systemic disregard for the rights of individuals with disabilities.

36.     Defendant's systemic access violations demonstrate that Defendant's uniform policies and practices fail to design, construct and alter its facilities so that they are readily accessible and usable, and/or that Defendant's maintenance and operational policies and practices are unable to maintain accessibility of Defendant's facilities.

37.     As evidenced by the widespread inaccessibility of Defendant's parking facilities, absent a change in Defendant's corporate policies and practices, access barriers are likely to reoccur in Defendant's facilities even after they have been remediated.

38.     Accordingly, Plaintiff seeks an injunction to remove the barriers currently present at Defendant's facilities and an injunction to modify the policies and practices that have created or allowed, and will create and allow, inaccessibility to affect Defendant's network of facilities.

## CLASS ALLEGATIONS

39.     Plaintiff brings this class action on behalf of herself and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of all wheelchair users who have attempted, or will attempt, to utilize the parking facilities at locations for which Defendant owns and/or controls the parking facilities.

40.     Numerosity: The class described above is so numerous that joinder of all individual members in one action would be impracticable.  The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court, and will facilitate judicial economy.

41.    <u>Typicality:</u>  Plaintiff's claims are typical of the claims of the members of the class. The claims of the Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

42.    <u>Common Questions of Fact and Law:</u>  There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's facilities and/or services due to Defendant's failure to make its facilities fully accessible and independently usable as above described.

43.    <u>Adequacy of Representation:</u>  Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the members of the class.  Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and have no interests antagonistic to the members of the class.  Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

44.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

<u>**SUBSTANTIVE VIOLATION**</u>

45.    The allegations contained in the previous paragraphs are incorporated by reference.

46.    On information and belief, Defendant's facilities were altered, designed, or constructed, after the effective date of the ADA.

47.     Defendant's facilities are required to be altered, designed, and constructed so that they are readily accessible to and usable by individuals who use wheelchairs.  42 U.S.C. § 12183(a).

48.     Further, the accessible features of Defendant's facilities, which include the parking lots and paths of travel, are required to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities.  28 U.S.C. § 36.211.

49.     The architectural barriers described above demonstrate that Defendant's facilities were not altered, designed, or constructed in a manner that causes them to be readily accessible to and usable by individuals who use wheelchairs, and/or that Defendant's facilities were not maintained so as to ensure that they remained accessible to and usably by individuals who use wheelchairs.

50.     Furthermore, the architectural barriers described above demonstrate that Defendant has failed to remove barriers, as required by 42 U.S.C. Section 12182(b)(2)(A)(iv).

51.     Defendant's repeated and systemic failures to design, construct and alter facilities so that they are readily accessible and usable, to remove architectural barriers, and to maintain the accessible features of its facilities constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

52.     Defendant's facilities are required to comply with the Department of Justice's 2010 Standards for Accessible Design, or in some cases the 1991 Standards 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406; 28 C.F.R., pt. 36, app. A.

53.     Defendant is required to provide individuals who use wheelchairs full and equal enjoyment of its facilities.  42 U.S.C. § 12182(a).

54.    Defendant has failed, and continues to fail, to provide individuals who use wheelchairs with full and equal enjoyment of its facilities.

55.    Defendant has discriminated against Plaintiff and the Class in that it has failed to make its facilities fully accessible to, and independently usable by, individuals who use wheelchairs in violation of 42 U.S.C. § 12182(a) as described above.

56.    Defendant's conduct is ongoing and continuous, and Plaintiff has been harmed by Defendant's conduct.

57.    Unless Defendant is restrained from continuing its ongoing and continuous course of conduct Defendant will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the Class.

58.    Given that Defendant has not complied with the ADA's requirements to make its facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiff invokes her statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the members of the class, prays for:

a.    A declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant's facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b.    A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.501(b) which directs Defendant to:  (i) take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii) that Defendant change its corporate policies and practices to prevent the reoccurrence of access barriers post-remediation; and, (iii) that Plaintiff shall monitor Defendant's facilities to ensure that the injunctive relief ordered above remains in place.

c.      An Order certifying the class proposed by Plaintiff, and naming Plaintiff as class representative and appointing her counsel as class counsel;

d.      Payment of costs of suit;

e.      Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

f.      The provision of whatever other relief the Court deems just, equitable and appropriate.


Dated:  June 27, 2016                          Respectfully Submitted,

                                               By: */s/ Benjamin J. Sweet*
                                               Benjamin J. Sweet (PA 87338)
                                               R. Bruce Carlson (PA 56657)
                                               Stephanie K. Goldin (PA 202865)
                                               **CARLSON LYNCH SWEET**
                                               **KILPELA & CARPENTER, LLP**
                                               1133 Penn Avenue, 5th Floor
                                                Pittsburgh, PA 15222
                                               (p) 412.322.9243
                                               (f) 412.231.0246